**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALTA PARTNERS, LLC, | Case No. 1:23-cv-07974-GHW |
| Plaintiff, | |
| vs. | |
| SUNCAR TECHNOLOGY GROUP INC., | |
| Defendant. | |

**AMENDED COMPLAINT**

Plaintiff Alta Partners, LLC ("Alta") files this action against Defendant SunCar Technology Group Inc. ("SunCar") for breach of contract and alleges as follows:

1.      Alta brings this action to remedy SunCar's breaches of an agreement governing public warrants (the "Public Warrants").

2.      The Public Warrants were originally issued by Goldenbridge Acquisition Corp. ("Goldenbridge"), a special purpose acquisition company or "SPAC." Goldenbridge issued the Public Warrants pursuant to a warrant agreement dated March 1, 2021 (the "Warrant Agreement"). A true and correct copy of the Warrant Agreement is attached hereto as **Exhibit A**.

3.      On May 17, 2023, SunCar and Goldenbridge completed a business combination (the "Business Combination") pursuant to which SunCar expressly assumed all obligations of the Warrant Agreement.

4.      Pursuant to the Warrant Agreement's clear, unambiguous terms, Public Warrant holders are entitled to exercise a right to buy one-half of one ordinary share of SunCar's common stock at a price of $11.50 per full share in the event that three conditions are met. First, the Business

Combination must be complete. Second, the shares of common stock underlying the Public Warrants (the "Warrant Shares") must be registered under the Securities Act via an effective registration statement. Third, at the time of exercise, there must be a current prospectus relating to such Warrant Shares.

5.      All three conditions were satisfied as of May 17, 2023. First, the Business Combination closed on May 17, 2023. Second, the Public Warrants and the Warrant Shares were registered via an effective registration statement on SunCar's Form F-4, which was reviewed by the U.S. Securities and Exchange Commission (the "SEC") and declared effective on March 30, 2023. Third, the Form F-4 prospectus was then-current.

6.      Despite the fact that all three conditions had been met and the Public Warrants were exercisable as of May 17, 2023, SunCar improperly and unlawfully blocked Alta's attempts to exercise its Public Warrants. This prevented Alta from buying SunCar shares for $11.50 per share and selling them for a higher price.

7.      By blocking Alta's attempts to exercise its Public Warrants and sell the underlying shares, SunCar directly caused millions of dollars of damages to Alta.

8.      Alta now seeks damages arising from SunCar's refusal to exercise Alta's Public Warrants and for materially misleading disclosures and/or omissions relating to the Public Warrants in the Form F-4.

## PARTIES

9.      Plaintiff Alta Partners, LLC is a limited liability company. Alta's sole member, Steven Cohen, is a resident of and domiciled in Puerto Rico.

10.     Alta is the registered holder of 421,060 Public Warrants of SunCar.

11. Defendant SunCar, Inc. is a Cayman Islands company with its principal place of business in Shanghai, People's Republic of China.

## JURISDICTION AND VENUE

12. Subject matter jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Alta and SunCar and the amount in controversy substantially exceeds $75,000.

13. This Court may exercise personal jurisdiction over SunCar pursuant to 28 U.S.C. § 1391 based on the terms of the Warrant Agreement. Section 9.3 of that Agreement provides that the parties (and their successors) "irrevocably submit[]" to the jurisdiction of "the courts of the State of New York or the United States District Court for the Southern District of New York." The courts of the State of New York or the United States District Court for the Southern District of New York have exclusive jurisdiction over "any action, proceeding or claim . . . arising out of, or relating in any way to this Warrant Agreement," and the parties "waive[] any objection to such exclusive jurisdiction and that such courts represent an inconvenient forum."

## FACTS

### A. Goldenbridge & SunCar's de-SPAC Transaction

14. A SPAC, also known as a blank check company, is a publicly traded company that holds cash in trust for its investors and exists for the purpose of identifying a non-public target company to combine with in a business combination that provides the target company with capital and brings it public as an alternative to the traditional initial public offering process.

15. This take-public transaction is usually referred to as a "de-SPAC" transaction. Following a successful business combination with a target company, investors in the SPAC become shareholders of the target company.

16.     In May 2022, Goldenbridge announced a business combination with SunCar as part of a de-SPAC transaction. SunCar would become a publicly listed company that would be listed on the Nasdaq stock market and trade under the new ticker symbol "SDA."

**B.  The Warrant Agreement**

17.     The Public Warrants at issue were issued pursuant to the Warrant Agreement between Goldenbridge and Continental Stock Transfer & Trust Company.

18.     Pursuant to Section 4.5 of the Warrant Agreement, the terms of the Warrant Agreement were automatically modified upon the close of the Business Combination to change the Public Warrants' issuer from Goldenbridge to SunCar.

19.     The terms and conditions of the Warrant Agreement are expressly incorporated into each Public Warrant certificate and are enforceable against SunCar by each Public Warrant holder.

20.     Pursuant to Sections 3.2 and 3.3 of the Warrant Agreement, SunCar's Public Warrants are exercisable upon completion of the Business Combination, provided the Warrant Shares are registered under the Securities Act and a prospectus relating to the Warrant Shares is current. The Warrant Agreement sets the exercise price as $11.50.

21.     Pursuant to Section 3.3.2 of the Warrant Agreement, the Public Warrants are exercisable on a "cashless" basis if there is no effective registration statement registered the Warrant Shares and more than 90 days have passed since the completion of the Business Combination.

22.     Pursuant to Section 7.4 of the Warrant Agreement, SunCar was obligated to "as soon as practicable, but in no event later than thirty (30) business days after the closing of a Business Combination" to "use its best efforts to file with the SEC a registration statement for the registration under the Act of the Ordinary Shares issuable upon exercise of the Warrants, and to

cause the same to become effective and to maintain the effective of such registration, and a current prospectus relating thereto, until the expiration of the Warrants."

23. The Business Combination was completed on May 17, 2023.

24. In addition, the Warrant Shares had been registered pursuant to SunCar's Form F-4 filed on January 18, 2023, amended on February 24, 2023, March 9, 2023, March 20, 2023, and March 27, 2023, and declared effective by the SEC on March 30, 2023.

25. On May 17, 2023, the prospectus was then-current and remains current.

26. Accordingly, the Public Warrants became exercisable as of May 17, 2023.

**C. The Registration of the Warrant Shares Pursuant to the Form F-4**

27. The Form F-4 made clear that it registered the Warrant Shares. The Calculation of Filing Fee Tables to the Form F-4 listed the Warrant Shares underlying the Public Warrants as one of the "Newly Registered Securities" and calculated a corresponding registration fee for those shares.

28. Specifically, among the Newly Registered Securities were "6,100,000 Warrants to purchase Class A Ordinary Shares held by GBRG shareholders" and "***3,050,000 Class A Ordinary Shares underlying the Warrants***." The referenced 6,100,000 Warrants included 5,750,000 Public Warrants—which are the subject of Alta's claims—and 350,000 Private Warrants, each exercisable for one-half share per Warrant. The referenced 3,050,000 Class A Ordinary Shares included 2,875,000 shares underlying the Public Warrants and 175,000 shares underlying the Private Warrants.

29. Upon information and belief, SunCar and/or Goldenbridge paid the registration fee associated with the registration of the Warrant Shares.

30.     If SunCar had intended to exclude the Warrant Shares from registration on the Form F-4—which, in any event, it could not do according to SEC regulations—it would not have paid to register them. Nor would the Form F-4 have referenced the Warrant Shares as being registered pursuant to the Form F-4.

31.     In addition, the Form F-4 expressly stated multiple times without qualification that "[t]he public warrants … ***will become exercisable upon the completion of the Business Combination***." This was in contrast to other classes of securities like the "GEM Shares" and "GEM Warrant Shares" that were "not issuable immediately after the Business Combination."

32.     The Form F-4 did not include any statement or disclosure that the Warrant Shares were not being registered on the Form F-4.[1]

33.     In addition, the Form F-4 did not include any statement or disclosure that holders of the Public Warrants may not be able to exercise the Public Warrants upon completion of the Business Combination or that the Public Warrants would be exercisable only if the Warrant Shares were covered by an additional registration statement that would become effective, if at all, at an unknown time in the future.

34.     Based on the Form F-4, SunCar represented to the investing public generally that once the Form F-4 was declared effective by the SEC, the Warrant Shares would be registered and the Public Warrants would become exercisable upon completion of the Business Combination.

---

[1] The Notes to Goldenbridge's Unaudited Condensed Financial Statements in the Form F-4 stated that it was Goldenbridge's intention to "have an effective and current registration statement … in effect promptly following consummation of an initial business combination." This text, however, text was lifted verbatim from Goldenbridge's prior SEC filings made well before the merger and is consistent with SunCar's later decision to register the warrant shares on the Form F-4. *E.g.*, Goldenbridge Form 10-K at F-19 (July 15, 2022); Goldenbridge Form 10-K at F-17 (Sept. 1, 2021).

35.     SEC regulations, as well as the instructions for Form F-4, make clear that the Form F-4 may be used to register *both* warrants and the common stock underlying those warrants for offer and sale on a delayed or continuous basis by the issuer.

36.     According to the SEC, a Form F-4 is to be used for the "[r]egistration of securities issued in business combination transactions." Securities and Exchange Commission, *Edgar Filer Manual (Volume II)* at 3-27, 3-42 (Dec. 2020), https://www.sec.gov/info/edgar/forms/edgform.pdf.

37.      Similarly, 17 C.F.R. § 239.25 provides that Form F-4 may be used for offerings of securities to be issued "in a transaction of the type specified in paragraph (a) of Rule 145." Rule 145(a) covers an "offer, offer to sell, offer for sale, or sale" of securities related to a "merger or consolidation." 17 C.F.R. § 230.145(a)(2).

38.     Securities Act Rule 415, in turn, states that "securities which are to be issued in connection with business combination transactions" may be offered "on a continuous or delayed basis," which can occur after the closing of the business combination. 17 C.F.R. § 230.415(a)(1)(viii). The instructions for Form F-4 expressly incorporate these rules.

39.     In fact, the SEC's published interpretations of its rules confirm that the Warrant Shares were *required to be* registered on the Form F-4. The SEC's longstanding position is that an issuer is deemed to be offering—and thus must register—the securities underlying a convertible security (e.g., the shares underlying warrants) if the convertible security can be exercised within 12 months. *See* SEC Division of Corporation Finance's C&DI 139.01 (stating that if a security is convertible or exercisable into the underlying security within one year of an offering, then the offering of both the warrant and the underlying security is deemed to be taking place and "the

underlying securities ***must be registered*** at the time the offer and sale of the convertible securities are registered" (emphasis added)).

40.     The SEC recently highlighted this requirement in connection with the SPAC business combination transaction for Li-Cycle Holdings Corp. ("Li-Cycle") (NYSE: LICY) in which Li-Cycle sought to register shares of common stock issuable upon exercise of warrants on its Form F-4 registration statement.

41.     As required by C&DI 139.01, the SEC instructed Li-Cycle to remove a risk factor disclosure that claimed the common stock underlying Li-Cycle's warrants was not being registered on the Form F-4 and that warrant holders would be subject to risk that an effective registration statement registering the warrant shares "may not be in place when an investor desires to exercise warrants." *See* SEC Comment Letter to Li-Cycle Holdings Corp. Re: Registration Statement on Form F-4 (Apr. 27, 2021). Li-Cycle removed the risk factor in advance of its Form F-4 being declared effective, and, based on the direction it received from the SEC, registered the warrant shares on the Form F-4.

42.     In addition, John Huber, one of the principal architects of Securities Act Rule 415 and Form S-4 (the domestic issue equivalent of the Form F-4), has offered expert testimony in another federal proceeding in which he confirms that Form S-4 "can be used to register the offer and sale of the warrants, the resale of the warrants, the exercise of the warrants for cash and the resulting issuance of the common stock upon exercise of the warrants, as well as the resale of such common stock." Expert Report of John J. Huber, ECF No. 34-1, ¶ 12.A, *Tang Capital Partners, LP v. BRC Inc.*, No. 22-cv-03476 (S.D.N.Y. Aug. 30, 2022) ("Huber Rpt.").

43.     Similarly, a practicing securities lawyer with over 35 years' experience in private practice and at the SEC has offered expert testimony in a separate proceeding that the Form S-4

"is not limited to registering securities offered solely pursuant to the immediate business combination transaction" and "can also be used to register securities that are offered on a delayed or continuous basis, such as the shares that are exchanged for warrants that are exercisable 30 days subsequent to the business combination." Expert Report of Walter Van Dorn, Esq. at 13, ECF No. 30-1, *Alta Partners, LLC v. Getty Images Holdings, Inc.*, No. 22-cv-8916 (S.D.N.Y. May 26, 2023).

**D. SunCar Refuses to Acknowledge That the Public Warrants Were Exercisable**

44.    Despite the fact that all conditions for exercising the Public Warrants had been met as of May 17, 2023, SunCar improperly repudiated its obligations under the Warrant Agreement and refused to acknowledge Alta's right to exercise its Public Warrants to purchase SunCar's common shares for $11.50 per share and sell those shares at a higher price.

45.    Beginning in May 2023, Alta contacted SunCar and asked whether the Warrant Shares were registered pursuant to an effective registration statement.

46.    SunCar's outside counsel at Pryor Cashman LLP responded that the Public Warrants cannot be exercised until a registration statement on Form F-1 is filed and declared effective by the SEC.

47.    SunCar and its counsel were wrong. The Public Warrants were exercisable as of May 17, 2023 pursuant to the clear and unambiguous Warrant Agreement because (a) the Business Combination was complete; (b) the Public Warrants and the Warrant Shares were registered via an effective registration statement on the Form F-4; and (c) the Form F-4 prospectus was current.

48.    By repudiating its obligations under the Warrant Agreement and precluding Alta from selling the Warrant Shares, SunCar caused millions of dollars of damages to Alta.

49.    In late May 2023 and early June 2023, SunCar's shares were worth as much as $45.73.

50.    By contrast, SunCar's Form F-1 was not even filed until July 17, 2023 and was not declared effective until August 15, 2023, at which point SunCar's shares were trading at approximately $12.00.

51.    The delay in allowing warrant holders like Alta to exercise the Public Warrants would have allowed SunCar, Goldenbridge, and their insiders to take advantage of SunCar's stock price while denying these same benefits to the investing public.

52.    For example, Goldenbridge had issued 350,000 Private Units in a private placement to the Sponsor, Cross Wealth Investment Holding Limited. The Private Units included warrants to purchase Goldenbridge shares similar to the Public Warrants, except that the Sponsor was permitted to exercise the Private Units "for cash even if a registration statement covering the ordinary shares issuable upon exercise of such warrants is not effective." Accordingly, the Sponsor could have exercised its warrants and reaped rewards that were not available to the investing public.

53.    SunCar's insiders and existing shareholders also benefitted from SunCar's inflated share price during this period because the exercise of Public Warrants would have had a dilutive effect on the value of their shares.

54.    Moreover, SunCar's Form F-1 was declared effective on the same day that the Public Warrants first became exercisable on a cashless basis pursuant to Section 3.3.2 of the Warrant Agreement. As a result, Alta and other warrant holders were deprived of the opportunity to exercise the Public Warrants on a cashless basis at a time that the stock was trading near the exercise price.

-10-

55.     In fact, Alta had planned to exercise approximately 111,000 warrants on a cashless basis and instructed its broker to do so before SunCar's Form F-1 became effective. But because of the timing of the effective registration of the Form F-1, Alta's cashless exercise was denied.

**COUNT I:  Breach of Contract—Failure to Exercise the Public Warrants**

56.     Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

57.     The Warrant Agreement is an enforceable contract that SunCar expressly assumed.

58.     Alta performed its obligations under the Warrant Agreement.

59.     Alta is the registered holder of 421,060 Public Warrants of SunCar.

60.     Pursuant to the clear and unambiguous terms of the Warrant Agreement, SunCar's Public Warrants are exercisable upon (a) the completion of the Business Combination, (b) the effective registration under the Securities Act of the Warrant Shares, and (c) the existence of a current prospectus relating thereto.

61.     All three conditions were satisfied as of May 17, 2023.

62.     When SunCar subsequently claimed that the Public Warrants would not become exercisable until the then-unfiled Form F-1 would become effective, SunCar materially breached and repudiated its obligations under the Warrant Agreement.

63.     SunCar also acted intentionally and knowingly to deprive warrant holders like Alta of the fruits of the Warrant Agreement, including by:

      a.  repudiating its obligation to allow Alta and other holders to exercise their Public Warrants on or after May 17, 2023; and,

      b.  falsely communicating to Alta that the Public Warrants were not exercisable based on the effective Form F-4 registration statement to deter Alta from taking the steps necessary to exercise its Public Warrants.

64.     As a direct and proximate consequence of SunCar's repudiation and material breach of the Warrant Agreement, Alta was denied the opportunity to exercise the Public Warrants and suffered significant monetary damages in an amount to be determined at trial.

**COUNT II:  Breach of Contract (in The Alternative)—Failure to Register the Warrant Shares and Maintain a Current Prospectus**

65.     Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

66.     Alta performed its obligations under the Warrant Agreement.

67.     Pursuant to Section 7.4 of the Warrant Agreement, SunCar was obligated to "as soon as practicable, but in no event later than thirty (30) business days after the closing of a Business Combination" to "use its best efforts to file with the SEC a registration statement for the registration under the Act of the Ordinary Shares issuable upon exercise of the Warrants, and to cause the same to become effective and to maintain the effective of such registration, and a current prospectus relating thereto, until the expiration of the Warrants."

68.     Alternatively, and assuming SunCar failed to effectively register the Warrant Shares through the Form F-4 and/or failed to maintain a current prospectus relating to the Warrant Shares, SunCar breached its obligations under Section 7.4 of the Warrant Agreement.

69.     For example, SunCar could and should have registered the Warrant Shares pursuant to the Form F-4 filed and deemed effective ahead of the closing of the Business Combination. As noted, Registration of the Warrant Shares pursuant to a Form F-4 registration statement is an accepted practice for SPAC mergers. SunCar thus breached its obligation to register the Warrant Shares "as soon as practicable."

70.     In adding and assuming that SunCar was required to update the prospectus at any point after the filing of the Form F-4, it could and should have done so to ensure that the Public Warrants would be exercisable upon completion of the Business Combination.

71.     Alternatively, and assuming that SunCar could not have effectively registered the Warrant Shares pursuant to the Form F-4, SunCar nonetheless breached its obligation to use its best efforts to cause the Form F-1 to become effective and, to the extent applicable, maintain a current prospectus. The Form F-1 was filed on July 17, 2023—months after the closing of the Business Combination—and was not declared effective until August 15, 2023.

72.     In addition, SunCar acted intentionally and knowingly to deprive warrant holders like Alta of the fruits of the Warrant Agreement, including by:

    a.  to the extent the Warrant Shares were not registered on the Form F-4, failing to act in good faith to register the Warrant Shares in a timely fashion either through the Form F-4 or the Form F-1;

    b.  to the extent the prospectus was not current at any time between May 17, 2023 and the present, failing to act in good faith to keep the prospectus relating to the Warrant Shares current; and,

    c.  to the extent the Warrant Shares were not registered on the Form F-4, delaying the effective registration of the Form F-1 in order to prevent warrant holders from exercising the Public Warrants on a cashless basis.

73.     As a direct and proximate consequence of these material breaches of the Warrant Agreement, Alta was denied the opportunity to exercise the Public Warrants and suffered significant monetary damages in an amount to be determined at trial. In addition, given the timing of the filing and declaration of effectiveness of the Form F-1, Alta was also deprived of the opportunity to exercise the Public Warrants on a cashless basis at a time that the stock was trading near the exercise price.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant as follows:

A.      Awarding general and compensatory damages to Alta in an amount to be determined at trial;

B.      Awarding Alta costs and disbursements, including attorney's fees, related to this dispute;

C.      Prejudgment and post-judgment interest; and

D.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues that are so triable.

Dated:  September 10, 2024
      Hartford, Connecticut

PLAINTIFF, ALTA PARTNERS, LLC


By*: /s/ Jeffrey Mueller*
    Jeffrey Mueller
    Matthew Letten
    Day Pitney LLP
    242 Trumbull Street
    Hartford, Connecticut 06103
    T: (860) 275-0100
    F: (860) 275-0343
    jmueller@daypitney.com
    mletten@daypitney.com

    Gregory Bruno
    Day Pitney LLP
    605 Third Avenue, 31st Floor
    New York, New York 10158
    Tel.: (212) 297-5800
    gbruno@daypitney.com

    *Attorneys for Plaintiff Alta Partners LLC*