USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/4/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                   :

ALTA PARTNERS, LLC,                  :

                                Plaintiff,    :             1:23-cv-7974-GHW

                -v-                      :      MEMORANDUM OPINION &
                                        :                 ORDER

SUNCAR TECHNOLOGY GROUP, INC.,    :

                              Defendant.  :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.   INTRODUCTION

Plaintiff Alta Partners, LLC ("Alta") purchased and attempted to exercise certain warrants to purchase shares in Defendant SunCar Technology Group, Inc. ("SunCar"). When SunCar refused to allow Alta to exercise the warrants, Alta commenced this action for breach of the warrant agreement. The warrant agreement provides that a cash exercise is available to a registered warrant holder only after completion of a business combination involving SunCar and only at such time as there is an effective registration statement and prospectus covering the shares issuable upon exercise of the warrants. SunCar filed a Form F-4 registering certain securities related to the business combination, but the parties dispute whether the Form F-4 effectively registered the securities underlying the warrants. SunCar moves to dismiss one of Alta's breach of contract claims, arguing that the Form F-4 failed to register effectively the securities issuable upon exercise of the warrants and that the prospectus in the Form F-4 was not current when Alta attempted to exercise the warrants. Because the Form F-4 did not specify that it registered the shares issuable upon exercise of the warrants, and because SunCar did not pay the proper registration fee to register those shares, SunCar's motion to dismiss is GRANTED.

## II.  BACKGROUND

### A.  Facts[1]

#### 1.  Parties and Relevant Non-Parties

SunCar is a Cayman Islands company with its principal place of business in Shanghai, People's Republic of China. Dkt. No. 40 ("Am. Compl.") ¶ 11. Alta is a limited liability company. *Id.* ¶ 9. Alta's sole member, Steven Cohen, is a resident of Puerto Rico. *Id.*

Goldenbridge Acquisition Corp. ("Goldenbridge" or "GBRG") is a special purpose acquisition company or "SPAC." *Id.* ¶ 2. A SPAC is a "publicly traded company that holds cash in trust for its investors and exists for the purpose of identifying a non-public target company" with which to enter a business combination. *Id.* ¶ 14. The SPAC "provides the target company with capital and brings it public as an alternative to the traditional initial public offering process." *Id.* "Following a successful business combination with a target company, investors in the SPAC become shareholders of the target company." *Id.* ¶ 15. This process is referred to as a "de-SPAC" transaction. *Id.*

In May 2022, Goldenbridge announced a business combination with SunCar as part of a de-SPAC transaction whereby SunCar would become a publicly listed company. *Id.* ¶ 16. The business combination was completed on May 17, 2023. *Id.* ¶ 23.

#### 2.  The Warrant Agreement

Goldenbridge issued public warrants (the "Public Warrants") pursuant to a warrant agreement dated March 1, 2021 (the "Warrant Agreement"). *Id.* ¶ 2; *see* Dkt. No. 40-1 (Warrant Agreement). Each warrant "entitle[s] its holder to purchase one-half (1/2) of one Ordinary Share" of Goldenbridge (the "Warrant Shares"). Warrant Agreement at 1. Section 4.5 of the Warrant

---

[1] The following facts are drawn from the Amended Complaint, exhibits attached thereto, and public filings with the SEC. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Agreement provides that in the event of a business combination, registered holders of the Public Warrants "shall thereafter have the right to purchase and receive, upon the basis and upon the terms and conditions specified in the Warrants . . . , the kind and amount of shares of stock . . . , that the Registered Holder would have received if such Registered Holder had exercised his, her or its Warrant(s) immediately prior to such event." In effect, "upon the close of the Business Combination" the "Public Warrants' issuer [changed] from Goldenbridge to SunCar." Am. Compl. ¶ 18.

The Warrant Agreement provides that a cash exercise is available to a registered holder of the Public Warrants only after "completion of [Goldenbridge's] initial business combination," § 3.2, and "only during such times that there is an effective registration statement registering the Warrant Shares, with the prospectus contained therein being available for the resale of the Warrant Shares," § 3.3.1. The Warrant Agreement sets the exercise price at "$11.50 per full share." Warrant Agreement § 3.1. The Warrant Agreement provides for a cashless exercise "if there is no effective registration statement registering the Warrant Shares on any day the Registered Holder desires to exercise the Warrants and more than 90 days have passed since [Goldenbridge] complete its initial business combination." Warrant Agreement § 3.3.2.

Section 7.4 of the Warrant Agreement states:

> <u>Registration of Ordinary Shares.</u> [Goldenbridge] agrees that as soon as practicable, but in no event later than thirty (30) business days after the closing of a Business Combination, it shall use its best efforts to file with the SEC a registration statement for the registration under the Act of the Ordinary Shares issuable upon exercise of the Warrants, and to cause the same to become effective and to maintain the effectiveness of such registration statement, and a current prospectus relating thereto, until the expiration of the Warrants in accordance with the provisions of this Agreement.

### 3. Goldenbridge Files a Form F-4

On January 18, 2023, Goldenbridge filed a Form F-4, which was subsequently amended on February 24, 2023; March 9, 2023; March 20, 2023; and March 27, 2023. Am. Compl. ¶ 24. The

3

Form F-4 was declared effective by the SEC on March 30, 2023. *Id.*; *see* Dkt. No. 43-1 (the effective "Form F-4"). The prospectus attached to the Form F-4 opens with a paragraph "about this proxy statement":

> This document, which forms part of a registration statement on Form F-4 filed by PubCo[2] (File No. 333-269295) with the SEC, constitutes a prospectus of PubCo under Section 5 of the Securities Act, with respect to the issuance of (i) the PubCo Class A Ordinary Shares to Goldenbridge's shareholders, (ii) **the PubCo Warrants to holders of GBRG Warrants in exchange for the GBRG Warrants,** (iii) the PubCo Class A Ordinary Shares underlying the PubCo Rights, and (iv) the PubCo Class A Ordinary Shares and the PubCo Class B Ordinary Shares to SunCar's shareholders, if the Business Combination is consummated. This document also constitutes a notice of meeting and a proxy statement under Section 14(a) of the Exchange Act, with respect to the Extraordinary General Meeting at which Goldenbridge's shareholders will be asked to consider and vote upon the Proposals.

Form F-4 at 14 (emphasis added).

In various places, the Form F-4 states that the Public Warrants "will become exercisable upon the completion of the Business Combination and will expire five years after the completion of the Business Combination or earlier upon redemption or liquidation." *Id.* at 38; *see also id.* at 281, 311, 333.

The Form F-4 also contains language that states that it is Goldenbridge's "current intention to have an effective and current registration statement covering the ordinary shares issuable upon exercise of the warrants and a current prospectus relating to such ordinary shares in effect promptly following consummation of an initial business combination." Form F-4 at 311. It goes on to state that "[n]otwithstanding the foregoing, if a registration statement covering the ordinary shares issuable upon exercise of the public warrants is not effective within 90 days following the consummation of our initial business combination, public warrant holders may . . . exercise warrants on a cashless basis." *Id.* Further, the Form F-4 reiterates that the Public Warrants will not be exercisable "unless at the time a holder seeks to exercise such warrant, a prospectus relating to the

---

[2] The Form F-4 refers to the surviving post-combination entity as "PubCo." *See* Form F-4 at 1.

4

PubCo Class A Ordinary Shares issuable upon exercise of the PubCo Warrants is current and the PubCo Class A Ordinary Shares have been registered." *Id.* at 282. It also reiterates that PubCo "agreed to use its best efforts to meet these conditions and to maintain a current prospectus relating to the PubCo Class A Ordinary Shares issuable upon exercise of the PubCo Warrants," with a warning that "PubCo cannot assure you that it will be able to do so." *Id.* at 209.

Table 1 of the Calculation of Filing Fee Tables to the Form F-4, Dkt. No. 43-3 (the "Fee Table"), shows the registration fees for "newly registered securities." A footnote to that table contains the following text:

> Based on the maximum number of Class A ordinary shares, $0.0001 par value per share ("Class A Ordinary Shares") and Class B ordinary shares, $0.0001 par value per share ("Class B Ordinary Shares"), of the registrant issuable upon a business combination (the "Business Combination") involving Goldenbridge Acquisition Limited ("GBRG") and Auto Services Group Limited, a Cayman Islands exempted company ("SunCar"). This number is based on the 30,371,435 Class A Ordinary Shares and 49,628,565 Class B Ordinary Shares issuable as consideration in connection with the Business Combination to the existing shareholders of SunCar in accordance with the terms of the Agreement and Plan of Merger, dated May 23, 2022. **This number includes:** (1) 30,371,435 Class A Ordinary Shares to be issued to the existing shareholders of SunCar, (2) 49,628,565 Class B Ordinary Shares to be issued to the existing shareholders of SunCar, (3) 1,745,613 Class A Ordinary Shares to be issued to GBRG public shareholders, (4) 1,816,250 Class A Ordinary Shares to be issued to the GBRG Sponsor, GBRG directors, certain affiliates of GBRG and certain other shareholders, including Class A Ordinary Shares underlying the Private Units, (5) 6,100,000 Warrants to purchase Class A Ordinary Shares held by GBRG shareholders, including the Warrants underlying the Private Units, (6) **3,050,000 Class A Ordinary Shares underlying the Warrants, including the Warrants underlying the Private Units,** (7) 610,000 Class A Ordinary Shares underlying the Rights, (8) 287,500 Class A Ordinary Shares included in the Units underlying the Unit Purchase Option, (9) 28,750 Class A Ordinary Shares underlying the Rights included in the Units underlying the Unit Purchase Option, (10) 287,500 Warrants included in the Units underlying the Unit Purchase Option, (11) 143,750 Class A Ordinary Shares underlying the Warrants included in the Units underlying the Unit Purchase Option; and (12) 1,001,250 Class A Ordinary Shares to be issued to advisors. Pursuant to Rule 416(a) of the Securities Act of 1933, as amended (the "Securities Act"), there are also being registered an indeterminable number of additional securities as may be issued to prevent dilution resulting from share sub-divisions, share dividends or similar transactions.

Fee Table at 2 (emphasis added). The Fee Table shows that SunCar calculated the fee under 17 CFR § 230.457(f). *Id.* at 1–2. The Fee Table also shows that SunCar calculated a fee of $102 *

5

0.0001102 = $0.01 total for the 3,050,000 shares underlying the Public Warrants. *Id.* at 1.

### 4. SunCar Blocks Alta from Exercising Its Public Warrants

"Alta is the registered holder of 421,060 Public Warrants of SunCar." Am. Compl. ¶ 10. In or around May 2023, Alta contacted SunCar to ascertain whether the Warrant Shares were registered pursuant to an effective registration statement. *Id.* ¶ 45. SunCar responded that the Public Warrants could not be exercised "until a registration statement on Form F-1 is filed and declared effective by the SEC." *Id.* ¶ 46. Around this time, SunCar's shares were worth as much as $45.73. *Id.* ¶ 49.

### 5. SunCar Files a Form F-1

On July 24, 2023, SunCar filed a Form F-1, Dkt. No. 43-2 (the "Form F-1"), which was declared effective by the SEC on August 15, 2023, Am. Compl. ¶ 50. The Form F-1 explicitly registers the issuance of "3,050,000 Class A Ordinary Shares Issuable Upon Exercise of Warrants." Form F-1 at 3. The Form F-1 contains a filing fee table that calculates the "registration fee" for the 3,050,000 Class A Ordinary Shares "issuable upon the exercise" of the Public and Private Warrants. Dkt. No. 43-4. The Form F-1 fee table shows a fee calculation pursuant to 17 CFR § 230.457(c), with a total registration fee amount of $3,371.20 for the Warrant Shares. *Id.* After the Form F-1 was considered effective, SunCar's shares were trading at around $12.00. Am. Compl. ¶ 50.

## B. Procedural History

Alta commenced this action on September 8, 2023. Dkt. No. 1. On September 10, 2024, Alta filed the Amended Complaint. Dkt. No. 40. Alta alleges that SunCar breached the Warrant Agreement by forbidding "Alta and other holders to exercise their Public Warrants on or after May 17, 2023," *id.* ¶ 63, and by failing "to act in good faith to register the Warrant Shares in a timely fashion . . . [and] to keep the prospectus relating to the Warrant Shares current," *id.* ¶ 72.

On September 20, 2024, SunCar filed a motion to dismiss Alta's first claim—that SunCar breached the Warrant Agreement by preventing exercise of the Public Warrants—pursuant to Fed.

6

R. Civ. P. 12(b)(6). Dkt. No. 41. SunCar filed an accompanying memorandum of law that same day. Dkt. No. 42 ("MOL"). Alta filed its opposition on October 11, 2024. Dkt. No. 44 ("Opposition"). SunCar filed a reply on October 18, 2024. Dkt. No. 46. On November 12, 2024, and November 14, 2024, Alta filed notices of supplemental authority. Dkt. Nos. 48, 49. On November 14, 2024, SunCar filed a response to Alta's first notice of supplemental authority. Dkt. No. 50. The Court held oral argument on the motion during a conference held on the record on February 25, 2025. *See* Transcript of February 25, 2025, Conference, Dkt. No. 70 ("Oral Arg. Tr.").

### III. LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). To determine plausibility, courts follow a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 663). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In resolving a motion to dismiss under Rule 12(b)(6), courts generally may not consider materials extrinsic to the complaint. Fed. R. Civ. P. 12(d). However, that rule is not absolute. In addition to the facts alleged in the complaint, courts "may consider any written instrument attached

7

to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  Courts may also consider "matters of which judicial notice may be taken."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).  Furthermore, on a motion to dismiss, the Court can consider statements made in a company's public filings with the SEC.  *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  However, the Court can consider them "'only to determine what the documents stated,' and 'not to prove the truth of their contents.'"  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

## IV. DISCUSSION

Alta's first breach of contract claim is premised on the allegations that SunCar's Form F-4 registered the Warrant Shares and contained a current prospectus relating to the Warrant Shares.  SunCar moves to dismiss, arguing that the Form F-4 failed to register the Warrant Shares and that the Form F-4 prospectus was not current when Alta attempted to exercise the Public Warrants.  Because the Form F-4 failed to effectively register the Warrant Shares, Alta has not pleaded a breach of the cash exercise provision of the Warrant Agreement.

### A. The Form F-4 Failed to Register the Warrant Shares

#### 1. Legal Standard

"A registration statement shall be deemed effective only as to the securities specified therein as proposed to be offered."  15 U.S.C. § 77f(a).  The law thus requires issuers to "specify" the securities proposed to be offered in a registration statement.  Section 77f does not suggest that an issuer can register securities indirectly or by implication.  *See id.*; *cf. Barnes v. Osofsky*, 373 F.2d 269, 273 (2d Cir. 1967) ("[A]n action under § 11 may be maintained 'only by one who comes within a

narrow class of persons, i.e. those who purchase securities that are the direct subject of the prospectus and registration statement.'").[3]

Section 77aa, the "schedule of information required in registration a statement," provides some insight into what information must be so "specified" pursuant to section 77f(a). 15 U.S.C. § 77aa. Relevant here, item 13 of section 77aa requires that an issuer provide "the specific purposes in detail and the approximate amounts to be devoted to such purposes, so far as determinable, for which the security to be offered is to supply funds." *Id.* § 77aa(13). Item 15 requires that an issuer provide "the estimated net proceeds to be derived from the security to be offered." *Id.* § 77aa(15).

It is for the Court to decide as a matter of law whether the Form F-4 effectively registered the Warrant Shares; the Court disagrees with Alta's argument that this is a fact-intensive inquiry unfit for resolution at the motion to dismiss stage. The Court, not a factfinder, determines the "legal effect" of a legal document. *Cf. Liang v. City of New York*, No. 10-cv-3089 (ENV) (VVP), 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013), *aff'd sub nom. Liang v. Zee*, 764 F. App'x 103 (2d Cir. 2019). The Court's role, at this stage, is to determine the legal effect of the Form F-4 by analyzing the words on the page, construed in light of the applicable securities laws and regulations. Whether the Form F-4 specifies the securities pursuant to 15 U.S.C. § 77f(a) is "a matter of statutory interpretation, rather than a matter of analyzing a factual record." *Securities and Exch. Comm'n v. Coinbase, Inc.*, No. 23-cv-4738 (KPF), 2025 WL 40782, at *7 (S.D.N.Y. Jan. 7, 2025). As further evidence of the fact that this question is ripe for resolution at this stage, counsel for Alta at oral

---

[3] SunCar raises strong policy arguments for this rule as well. Securities law "imposes strict liability on offerors and sellers of unregistered securities regardless of any degree of fault, negligence or intent on the seller's part." *S.E.C. v. Bronson*, 14 F. Supp. 3d 402, 408 (S.D.N.Y. 2014) (internal quotation marks omitted). And "[r]egistration exemptions are construed strictly to promote full disclosure of information for the protection of the investing public." *S.E.C. v. Cavanagh*, 445 F.3d 105, 115 (2d Cir. 2006). The purpose of a strict liability regime for failing to register a security and the purpose of strict construction of exemptions would both be defeated if an issuer could meet registration requirements by merely including ambiguous language in a registration filing. The consequent incentive would be for issuers to include vague, broad, and ambiguous language in registration statements to later evade liability for selling unregistered securities.

argument failed to articulate the nature of the evidence—except for legal experts—that Alta could marshal in discovery to aid in determining whether the Form F-4 adequately specifies the Warrant Shares. Oral Arg. Tr. at 27:4–19.

Alta cites *Tang Capital Partners, LP. v. BRC Inc.* ("*Tang I*") for the proposition that Alta, at this stage, need only plead that it is "plausible" that the Form F-4 registered the Warrant Shares. 661 F. Supp. 3d 48, 70–72 (S.D.N.Y. 2023). Alta thus asks the Court to reserve final judgment on whether the securities were effectively registered until a factual record has been established. But Alta misreads *Tang I*. In *Tang I*, the S-4 form explicitly stated that it was registering the "common stock underlying [the] warrants." *Id.* at 56. As discussed below, no such language appears in the Form F-4. Thus, the issue in *Tang I* was not, as it is here, whether the S-4 registered the underlying securities. The issue in *Tang I* was whether the registered securities (the shares "underlying" the warrants) were registered for the purpose required by the warrant agreement (to be "issuable upon exercise" of the warrants). *Id.* at 63. Put differently, the question in *Tang I* was a matter of *contract* interpretation: what "was required . . . under the [w]arrant [a]greement." *Tang Capital Partners, LP v. BRC Inc.* ("*Tang II*"), No. 22-cv-3476 (RWL), 2024 WL 4716315, at *23 (S.D.N.Y. Nov. 8, 2024).

The *Tang I* court found that the warrant agreement was ambiguous and thus denied dismissal because the court found it "plausible" that the purpose referenced in the warrant agreement was effectuated by the S-4's registration of the underlying securities. *See Tang II*, 2024 WL 4716315, at *23 ("*Tang I* further found that . . . the Warrant Agreement was ambiguous as to the number and type of SEC filings contractually required before BRC must issue stock upon exercise of a warrant. To resolve that ambiguity, the Court determined it would need to consider extrinsic evidence." (internal quotation marks omitted)). Here, by contrast, the Warrant Agreement is not ambiguous, and the question is whether the underlying Warrant Shares were registered at all. Thus, the plausibility standard employed in *Tang I* is inapplicable here, and extrinsic evidence is not required to

resolve the relevant question before this Court.

### 2. The Form F-4 Does Not Directly Specify that the Form F-4 Proposes an Offering of the Warrant Shares

While Alta points to vague language that might implicitly suggest that the Form F-4 intends to register the Warrant Shares, the Form F-4 fails to directly specify that Goldenbridge was proposing to offer the Warrant Shares. The Form F-4 noticeably omits any mention of the shares underlying the Public Warrants on the first page of the prospectus, which defines what the document "constitutes" and "does not constitute." Form F-4 at 14. The Form F-4 states that it constitutes "part of a registration statement" and "prospectus . . . with respect to the issuance of" several securities. *Id.* It explicitly lists, among others, "the PubCo Warrants to holders of GBRG Warrants in exchange for the GBRG Warrants." *Id.* This statement only specifies the exchange of warrants—the overlying securities—and not the shares issuable upon exercise of the warrants—the underlying securities.[4] Contrast the language regarding the warrants with the language in that very

---

[4] It is permissible for SunCar to register the exchange of the Public Warrants separately from the issuance of the underlying Warrant Shares. The Securities Act differentiates the issuance or transfer of a convertible security from "an offer or sale" of the underlying security. *See* 15 U.S.C. § 77b(a)(3):

> The issue or transfer of a right or privilege, when originally issued or transferred with a security, giving the holder of such security the right to convert such security into another security of the same issuer or of another person, . . . which right cannot be exercised until some future date, shall not be deemed to be an offer or sale of such other security; but the issue or transfer of such other security upon the exercise of such right of conversion or subscription shall be deemed a sale of such other security.

*See also* 17 CFR § 230.457(i) (applies "[w]here convertible securities and the securities into which conversion is offered are registered at the same time"); *see also id.* § 230.457(g) ("If the warrants or rights are to be registered for distribution in the same registration statement as the securities to be offered pursuant thereto, no separate registration fee shall be required."). Alta cites SEC guidance which states that "[w]here the offer and sale of convertible securities or warrants are being registered under the Securities Act, and such securities are convertible or exercisable within one year, [] the underlying securities [must] be registered at that time." SEC Division of Corporate Finance, Compliance and Disclosure Interpretations, *Securities Act Sections*, Section 139. Securities Act Section 5, Q. 139.01 (Aug. 14, 2009). However, it was not necessarily the case that the Public Warrants were convertible or exercisable within one year of the filing of the Form F-4. The Form F-4 states that "[t]he PubCo Warrants will become exercisable on the later of the completion of the Business Combination and 12 months from the date of the IPO." Form F-4 at 281. Thus, the Public Warrants *may* have been convertible or exercisable within one year, but they also may not have been, contingent on the date of the business combination and IPO.

Further, SEC Compliance and Disclosure Interpretations ("C&DIs") are "not binding due to their highly informal nature"; "[t]hey are not rules, regulations, or statements of the Commission." SEC, *Compliance and Disclosure Interpretations* (July 31, 2024), https://www.sec.gov/rules-regulations/staff-guidance/compliance-disclosure-interpretations. *See also Chechele v. Stand. Gen. L.P.*, No. 20-CV-3177 (KPF), 2021 WL 2853438, at *7 (S.D.N.Y. July 8, 2021) (stating that C&DIs can be "persuasive, particularly in light of the absence of any contrary precedent"). And even if the Court were persuaded by C&DI 139.01, it only follows that SunCar *should* have registered both the underlying and

11

same paragraph explicitly specifying that the Form F-4 is registering the shares "*underlying* the PubCo Rights." *Id.* (emphasis added). The notable lack of specification of the shares "underlying" the Public Warrants demonstrates a different intention—that SunCar was not in fact registering the Warrant Shares. *Id.*

Additionally, as SunCar raised at oral argument, the Form F-4 fails to satisfy the requirements of section 77aa for the registration of the Warrant Shares. The Form F-4 does not describe the purpose of the proceeds to be earned from the exercise of the Warrant Shares, nor does the Form F-4 even specify how much is expected to be raised from the exercise of the Warrant Shares. *See* Form F-4; Oral Arg. Tr. at 16:15–17. By contrast, the Form F-1 clearly specifies that SunCar "will receive up to an aggregate of approximately $35.1 million from the exercise of the Warrants" and sets out the intended "use of [the] proceeds." Dkt. No. 43-2 at 3, 60.

Alta fails to point to clear language in which the Form F-4 specifies or purports to register the Warrant Shares. Alta cites language scattered across the over 500-page document stating that the Public Warrants "will become exercisable" upon completion of the business combination. Form F-4 at 38, 281, 311, 333. Alta's contention is that this is an implicit statement that the requirements for exercise will be met upon completion of the business combination—specifically that there is an effective registration statement registering the Warrant Shares. The Court cannot rely on this language alone to rule that the Form F-4 effectively registered the shares.

At best, Alta's appeal to these ambiguous phrases amounts to an argument that the Form F-4 is ambiguous and registered the shares indirectly or by implication.[5] But indirect registration or

---

overlying securities together, not that SunCar *did* do so. Therefore, the Court cannot rule that the Form F-4, in purporting to register the exchange of the Public Warrants, necessarily registered the underlying shares, without clear language to that effect.

[5] The Court notes that the Form F-4 also contains language that suggests the contrary implication: the Form F-4 states that it was SunCar's "intention" to have an effective registration statement for the shares promptly following the business combination, but that SunCar "cannot assure" that it will be done. Form F-4 at 209, 311. These statements create an equally strong implication that no effective registration statement existed at the time the Form F-4 was filed.

12

registration by implication is not the standard set forth in the Securities Act for effective registration, and Alta provides no case law that employs a more lenient rule than direct specification. *In the Matter of United Combustion Corp.*, 3 S.E.C. 1062 (S.E.C. Release Oct. 19, 1938) ("[I]t would be contrary to the obvious intent of the Securities Act to permit the registration of more securities than are presently intended to be offered, and thus give securities offered at some remote future time at least the appearance of a registered status."). Alta's proposed standard would allow clever lawyers to draft or find ambiguous excerpts in lengthy filing statements to defend against claims of selling unregistered securities, and could, as here, allow a party to assert that securities an issuer had not intended to register in fact were. The clear, bright line rule, established by the Securities Act, that a registration statement must directly "specify" the registered securities avoids such gamesmanship. The Form F-4 fails to "specify" that it registered the shares underlying the Public Warrants, and therefore the Form F-4 failed to effectively register those shares.

### 3. The Form F-4 Fee Table Shows that SunCar Did Not Pay the Registration Fee Required to Register the Warrant Shares

The Fee Table further demonstrates that the Form F-4 failed to effectively register the Warrant Shares. While the Fee Table does list the 3,050,00 "Class A Ordinary Shares underlying the Warrants" as "newly registered securities," the fee shown in the table for these securities is calculated under the rule for an "exchange" of securities, not an issuance of securities, and consequently the fee paid is too small for proper registration of the Warrant Shares under the Securities Act. "The filing of a registration statement shall not be deemed to have taken place unless it is accompanied by a United States postal money order or a certified bank check or cash for the amount of the fee required under subsection (b)." 15 U.S.C. § 77f(c). However, "[t]he failure to pay an insignificant amount of the required fee at the time of filing, as the result of a bona fide error, shall not be deemed to affect the date of filing." 17 CFR § 230.457(a).

Subsection (b) provides that "[a]t the time of filing a registration statement, the applicant

13

shall pay . . . a fee at a rate" based on "the maximum aggregate price at which such securities are proposed to be offered." 15 U.S.C. § 77f(b)(1). Rule 457(i) provides the method of computing the registration fee when registering a warrant while simultaneously registering the common stock underlying the warrant. *See* SEC Division of Corporate Finance, Compliance and Disclosure Interpretations, *Securities Act Rules*, Section 240. Rule 457 – Computation of Fee, Q. 240.06 (Jan. 26, 2009). Specifically, Rule 457(i) provides:

> Where convertible securities and the securities into which conversion is offered are registered at the same time, the registration fee is to be calculated on the basis of the proposed offering price of the convertible securities alone, except that if any additional consideration is to be received in connection with the exercise of the conversion privilege the maximum amount which may be received shall be added to the proposed offering price of the convertible securities.

17 CFR § 230.457(i). By contrast, Rule 457(f)(2), which applies "[w]hen securities are to be offered in exchange for other securities," provides that the registration fee may be calculated using "one-third of the . . . par value." 17 CFR § 230.457(f)(2).

When SunCar filed the Form F-4, it calculated the registration fee under Rule 457(f)(2) rather than Rule 457(i). *See* Fee Table at 2 ("calculating the registration fee in accordance with Rule 457(f)(2)"). That was not the correct rule for registering the Warrant Shares. Alta concedes this point. *See* Opposition at 13 ("SunCar calculated the filing fee under Rule 457(f) when it should have instead calculated the fee under Rule 457(i)."). The Fee Table shows that the fee for registering the Warrant Shares was calculated using "one third" of the "$0.0001 par value per share." Fee Table at 2; *see* 17 CFR § 230.457(f)(2). The Fee Table does not calculate the fee for the Warrant Shares using the $11.50 exercise price, pursuant to Rule 457(i) for registering warrants *and* their underlying shares. *See* Fee Table; Warrant Agreement § 3.1. Thus, not only does the prospectus purport to register only the "exchange" of the Public Warrants, but the Fee Table calculates a registration fee pursuant to the rule only for the "exchange" of warrants. SunCar did not specify that it was offering the shares underlying the Public Warrants in the Form F-4, nor did SunCar pay the proper fee to do so.

14

The result of calculating the registration fee pursuant to Rule 457(f)(2) is that SunCar paid a nominal fee of just one cent. Fee Table at 1. Tellingly, in the Form F-1, in which SunCar purported to register the Warrant Shares, SunCar calculated the registration fee pursuant to Rule 457(c) and came out with a total fee amount of $3,371.20. Dkt. No. 43-4. Therefore, as Alta concedes, if SunCar was attempting to register the Warrant Shares in the Form F-4, SunCar underpaid the applicable registration fee. *See* Opposition at 13. And at oral argument, counsel for Alta further conceded that this underpayment was not "insignificant." Oral Arg. Tr. at 31:2–9; *see* 17 CFR § 230.457(a) ("[F]ailure to pay an insignificant amount of the required fee at the time of filing, as the result of a bona fide error, shall not be deemed to affect the date of filing."). Because SunCar calculated the registration fee under Rule 457(f) and therefore underpaid the required registration fee, the Form F-4 did not effectively register the Warrant Shares.

### B. Because the Form F-4 Did Not Effectively Register the Warrant Shares, Alta Fails to Plead that SunCar Breached the Warrant Agreement

Because the Form F-4 did not effectively register the Warrant Shares, SunCar did not breach the Warrant Agreement when it prevented Alta from exercising the Public Warrants. The Warrant Agreement is governed by New York law. Warrant Agreement § 9.3. Under New York law, to state a claim for breach of contract "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)). "When interpreting a contract, our 'primary objective is to give effect to the intent of the parties as revealed by the language of their agreement.'" *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 113–14 (2d Cir. 2014) (ellipsis omitted) (quoting *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000)). "The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its

15

provisions." *Id.* at 114 (brackets omitted) (quoting *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012)).

On a motion to dismiss, "a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). In other words, courts are not "obliged to accept the allegations of the complaint as to how to construe a contract," but they "should resolve any contractual ambiguities in favor of the plaintiff on a motion to dismiss." *Maniolos v. United States*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010), *aff'd*, 469 F. App'x 56 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005)).

Thus, as a "threshold question," courts must consider if "the terms of the contract are ambiguous." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *Orlander v. Staples*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990)). "Ambiguity is determined by looking within the four corners of the document, not to outside sources." *CVS Pharmacy, Inc. v. Press Am., Inc.*, 377 F. Supp. 3d 359, 374 (S.D.N.Y. 2019) (quoting *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009)); *see also Brad H. v. City of New York*, 17 N.Y.3d 180, 186 (2011) ("Ambiguity is determined within the four corners of the document; it cannot be created by extrinsic evidence that the parties intended a meaning different than that expressed in the agreement . . . ."). A contract is unambiguous when it has "a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (citation omitted). Conversely,

> [a] contract is ambiguous under New York law if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular

16

trade or business.

*Orchard Hill*, 830 F.3d at 156–57 (internal quotation marks omitted) (quoting *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 114 (2d Cir. 2014)). "The language of a contract . . . is not made ambiguous simply because the parties urge different interpretations." *Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 348 (S.D.N.Y. 2013) (internal quotation marks omitted).

Courts analyze ambiguity using the "normal rules of contract interpretation: words and phrases should be given their plain meaning and a contract should be construed so as to give full meaning and effect to all of its provisions." *Orchard Hill*, 830 F.3d at 157 (internal quotation marks omitted) (quoting *Orlander*, 802 F.3d at 295); *see also Brad H.*, 17 N.Y.3d at 185 ("To determine whether a writing is unambiguous, language should not be read in isolation because the contract must be considered as a whole."). But a court applying New York law "may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case." *Bank of N.Y. Mellon v. WMC Mortg., LLC*, No. 12-cv-7096 (DLC), 2015 WL 2449313, at *2 (S.D.N.Y. May 22, 2015) (quoting *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992)). Rather, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *MHR Cap. Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009) (internal quotation marks omitted).

Alta has failed to adequately plead that SunCar failed to perform under the unambiguous terms of the Warrant Agreement. Alta's claim is that SunCar failed to allow the warrant holders to exercise the Public Warrants after an effective registration statement registering the Warrant Shares had been filed, in violation of § 3.3.1 of the Warrant Agreement. Am. Compl. ¶¶ 4–6. Because the Court holds that the Form F-4 did not effectively register the Warrant Shares, there was no effective registration statement covering the Warrant Shares at the time Alta attempted to exercise the Public

17

Warrants. Counsel for Alta raised for the first time at oral argument the contention that the Warrant Agreement only requires that the registration statement be "deemed effective by the SEC" in order to trigger cash exercise, even if that statement fails to effectively register the Warrant Shares. Oral Arg. Tr. at 33:15–34:19. However, § 3.3.1 of the Warrant Agreement requires that there be "an effective registration statement *registering the Warrant Shares*" to trigger cash exercise. The plain meaning of this term is that the registration statement must effectively register the Warrant Shares. Plaintiff previously acknowledged this point. *See* Am. Compl. ¶ 4 (alleging that "the Warrant Agreement's clear, unambiguous terms" provide that "the shares of common stock underlying the Public Warrants . . . must be registered under the Securities Act via an effective registration statement."). Thus, because the Public Shares were not effectively registered in the Form F-4, Alta was not required to allow exercise of the Public Warrants, and thus Alta did not breach the Warrant Agreement when it refused to do so.

### C. The *Tang* and *Getty* Decisions Do Not Control the Present Motion

Alta cites the decisions in *Tang I*, *Tang II*, and *Alta Partners, LLC v. Getty Images Holdings, Inc.*, 700 F. Supp. 3d 32 (S.D.N.Y. 2023), but those decisions do not control in resolving the present motion. In both of those cases, the S-4 forms were found to register the shares issuable upon exercise of public warrants. However, the S-4 forms in those cases explicitly stated that they were registering the shares "underlying warrants" or "issuable upon exercise" of the warrants. *See Getty Images*, 700 F. Supp. 3d at 37; *Tang I*, 661 F. Supp. 3d at 56. No such language appears in the Form F-4.

Therefore, unlike in those cases, the Court need not grapple with what Judge Rakoff called an "invented-for-litigation distinction" between registering the underlying shares for an exchange and registering the underlying shares for issuance. *Getty Images*, 700 F. Supp. 3d at 42. The question here is simply whether the underlying shares were registered at all, for any purpose. The relevant

18

statutes and regulations make a distinction between registering the "convertible securit[y] and the securit[y] into which conversion is offered." 17 CFR § 230.457(i). Therefore, it is not discordant with *Tang* and *Getty* for the Court to hold, as it does, that the Form F-4 effectively registered the exchange of the Public Warrants but failed to register the underlying Warrant Shares.

## V.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted. Count I of the Amended Complaint is dismissed with prejudice. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 41.

SO ORDERED.

Dated: March 4, 2025
       New York, New York

_____
GREGORY H. WOODS
United States District Judge